MORGAN, LEWIS & BOCKIUS LLP
Andrew P. Frederick (SBN 284832)
andrew.frederick@morganlewis.com
Nicole L. Antonopoulos (SBN 306882)
nicole.antonopoulos@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel: +1.650.843.4000
Fax: +1.650.843.4001

Attorneys for Defendant
ICON CLINICAL RESEARCH LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT NEDVED and KYRSTIN HARVEY, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ICON CLINICAL RESEARCH LLC, and DOES 1 - 10, inclusive;<br><br>Defendant. | Case No. '25CV3541 WQHVET<br><br>**DEFENDANT ICON CLINICAL RESEARCH LLC'S NOTICE OF REMOVAL OF CASE TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, 1446, 1453]** |

# TABLE OF CONTENTS


Page

I. SUMMARY OF RELEVANT PROCEDURAL HISTORY .......... 1

II. THE REMOVAL IS TIMELY .......... 2

III. DIVERSITY JURISDICTION EXISTS .......... 3

- A. The Court Has Original Subject Matter Jurisdiction Under CAFA. .......... 3
  - 1. Diversity of Citizenship Exists. .......... 4
    - a. Plaintiff Harvey Is a Citizen of California. .......... 4
    - b. ICON Clinical Research LLC Is a Citizen of Delaware and Pennsylvania. .......... 4
  - 2. There Are More Than 100 Putative Class Members. .......... 7
  - 3. The Amount-in-Controversy Requirement Is Satisfied .......... 7
    - a. Plaintiffs' Overtime Claim Places at Least $3,873,870 in Controversy. .......... 9
    - b. Plaintiffs' Meal and Rest Period Claims Places at Least $2,066,064 in Controversy. .......... 10
    - c. Plaintiffs' Waiting Time Penalties Claim Places at Least $1,011,945.60 in Controversy. .......... 12
    - e. Plaintiffs' Alleged Attorneys' Fees Place at Least $1,797,432.50 in Controversy. .......... 13
    - f. The Amount in Controversy for Plaintiffs' Claims Exceeds $5,000,000 .......... 14
- B. Diversity Jurisdiction Exists Under 28 U.S.C. § 1332(a) .......... 14
  - 1. Complete Diversity of Citizenship Exists .......... 15
    - a. Plaintiffs are Citizens of California and Missouri .......... 15
    - b. Defendant is a Citizen of Delaware and Pennsylvania .......... 15
  - 2. The Amount in Controversy for Plaintiff Harvey's Claims Exceeds $75,000 .......... 16
    - a. Plaintiff Harvey's Individual Overtime Claim Places at Least $20,703.83 in Controversy .......... 16
    - b. Plaintiff Harvey's Individual Meal and Rest Period Claims Places at Least $11,042.04 in Controversy .......... 17
    - c. Plaintiff Harvey's Waiting Time Penalties Claim Places at Least $15,230.40 in Controversy. .......... 17
    - d. Plaintiff Harvey's Claim for Attorneys' Fees Places at Least $75,000 in Controversy. .......... 18
    - e. The Amount in Controversy for Plaintiff Harvey's Individual Claims Exceeds $75,000. .......... 19

**TABLE OF CONTENTS**
(continued)

**Page**

IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED .......... 20
V. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019) .......... 7

*Armstrong v. Church of Scientology Int'l*,
243 F.3d 546 (9th Cir. 2000) .......... 4

*Baker v. Tech Data Corp.*,
2022 WL 1080944 (C.D. Cal. Apr. 11, 2022) .......... 19

*Banta v. Am. Med. Response Inc.*,
2011 U.S. Dist. LEXIS 77558 (C.D. Cal. July 15, 2011) .......... 16

*Betancourt v. OS Restaurant Servs., LLC*,
83 Cal. App. 5th 132 (2022) .......... 18, 19

*Boon v. Allstate Ins. Co.*,
229 F. Supp. 2d 1016 (C.D. Cal. 2002) .......... 4

*Boyce v. Indep. Brewers United Corp.*,
2017 WL 2377107 (N.D. Cal. June 1, 2017) .......... 19

*Brinker v. Superior Court*,
53 Cal. 4th 1004 (2012) .......... 11

*Campbell v. Vitran Exp., Inc.*,
471 F. App'x 646 (9th Cir. 2012) .......... 8

*Carden v. Arkoma Assocs.*,
494 U.S. 185 (1990) .......... 5

*Carleu v. FCA US LLC*,
2016 WL 304295 (C.D. Cal. Jan. 25, 2016) .......... 5

*Chavez v. JPMorgan Chase & Co.*,
888 F.3d 413 (9th Cir. 2018) .......... 13

*Cosgrove v. Bartolotta*,
150 F.3d 729 (7th Cir. 1998) .......... 5

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) .......... 7

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fritsch v. Swift Transportation Co. of Arizona, LLC*,
899 F.3d 785 (9th Cir. 2018) .......... 13, 18

*Gen. Tech. Applications, Inc. v. Exro Ltda.*,
388 F.3d 114 (4th Cir. 2004) .......... 5

*GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*,
357 F.3d 827 (8th Cir. 2004) .......... 5

*Gonzales v. CarMax Auto Superstores, LLC*,
840 F.3d 644 (9th Cir. 2016) .......... 13

*Handelsman v. Bedford Village Assocs. Ltd P'ship*,
213 F.3d 48 (2d Cir. 2000) .......... 5

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) .......... 6

*Johnson v. Columbia Props. Anchorage, LP*,
437 F.3d 894 (9th Cir. 2006) .......... 4, 5

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) .......... 4

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C.D. Cal. 2002) .......... 8

*Lew v. Moss*,
797 F.2d 747 (9th Cir. 1986) .......... 4

*Lewis v. Verizon Communications Inc.*,
2010 WL 4645465 (9th Cir. 2010) .......... 9

*Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*,
414 Fed. App'x 62 (9th Cir. 2011) .......... 5

*Lucas v. Michael Kors (USA), Inc.*,
2018 WL 2146403 (C.D. Cal. May 9, 2018) .......... 11

*Martinez v. Morgan Stanley & Co. Inc.*,
2010 WL 3123175 (S.D. Cal. August 9, 2010) .......... 13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mejia v. DHL Express (USA), Inc.*,
2015 WL 2452755 (C.D. Cal May 21, 2015) .......... 11

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) .......... 6, 16

*In re Quintus Sec. Litig.*,
148 F. Supp. 2d 967 (N.D. Cal. 2001) .......... 14

*Rhoades v. Progressive Casualty Ins., Co.*,
410 F. App'x 10 (9th Cir. 2010) .......... 8

*Robert Nedved and Kyrsten Harvey v. ICON Clinical Research LLC, and Does 1 - 10*,
Case No. 25CU060979C .......... *passim*

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*,
374 F.3d 1020 (11th Cir. 2004) .......... 5

*Sanchez v. Russell Sigler, Inc.*,
2015 WL 12765359 (C.D. Cal. Apr. 28, 2015) .......... 11

*Sasso v. Noble Utah Long Beach, LLC*,
2015 WL 898468 (C.D. Cal. Mar. 3, 2015) .......... 19

*Singer v. State Farm Mut. Auto. Ins. Co.*,
116 F.3d 373 (9th Cir. 1997) .......... 16

*Swans v. Fieldworks, LLC*,
2023 WL 196918 (C.D. Cal. Jan. 17, 2023) .......... 19

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
602 F.3d 1087 (9th Cir. 2010) .......... 4

*Wheatley v. MasterBrand Cabinets, LLC*,
2019 WL 688209 (C.D. Cal. Feb. 19, 2019) .......... 11

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332, 1367 1441, 1446, and 1453, Defendant ICON Clinical Research LLC ("Defendant") hereby removes the above-entitled action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because there are over 100 putative class members, minimum diversity exists and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has original subject matter jurisdiction in the form of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.

In support of this removal, Defendant states as follows:

## I. SUMMARY OF RELEVANT PROCEDURAL HISTORY

1. On November 12, 2025, Plaintiffs Robert Nedved ("Nedved") and Kyrstin Harvey ("Harvey") (collectively, "Plaintiffs") filed an unverified class action complaint in the Superior Court of the State of California, in and for the County of San Diego, entitled *Robert Nedved and Kyrsten Harvey v. ICON Clinical Research LLC, and Does 1 - 10*, Case No. 25CU060979C ("Complaint"). The Complaint alleges seven causes of action on behalf of Plaintiffs and a putative class under California law: (1) failure to pay minimum and overtime wages; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to pay all wages timely; (5) failure to timely pay all final wages (i.e., waiting time penalties); (6) failure to provide accurate, itemized wage statements; and (7) unlawful and unfair business acts and practices. Compl., ¶¶ 25-39. Plaintiffs define the putative class

as "[a]ll persons who at any time after four (four) years prior to the filing of this action, or shorter statute of limitations as determined by the Court, through the date of trial, who were employed by Defendant in California as exempt CRAs, including but not limited to clinical research associate I, clinical research associate II and senior clinical research associate." Compl., ¶ 14.

2. Plaintiffs' action was therefore commenced after the effective date of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005), codified at 28 U.S.C. §§ 1332(d), 1453 and 1711-1715.

3. On November 14, 2025, Plaintiffs caused the Summons; Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference; Notice of E-Filing Requirements and Imaged Documents; Stipulation to Use Alternative Dispute Resolution (ADR); and Alternative Dispute Resolution (ADR) Information to be served on Defendant's process server by personal service. A true and correct copy of the Complaint is attached as **Exhibit 1** and the other documents Plaintiffs served on Defendant are attached as **Exhibit 2**. These documents are incorporated by reference.

4. On November 24, 2025, Plaintiff filed a Proof of Service with the state court reflecting service of the case-initiating documents included in Exhibits 1 and 2. A true and correct copy of this Proof of Service is attached **Exhibit 3** and is incorporated by reference.

5. On December 9, 2025, Defendant caused its Answer to the Complaint to be filed and served. A true and correct copy of the Answer is attached as **Exhibit 4** and is incorporated by reference.

6. Exhibits 1 through 4 constitute all the pleadings, process, and orders served upon or by Defendant, or filed, in state court.

## II. THE REMOVAL IS TIMELY

7. Defendant has timely removed this action within thirty (30) days of service. Because this Notice of Removal is filed within 30 days of service of the

Complaint on Defendant, it is timely under 28 U.S.C. §§ 1446(b).

8. No previous Notice of Removal has been filed or made with this Court for the relief sought.

## III. DIVERSITY JURISDICTION EXISTS

### A. The Court Has Original Subject Matter Jurisdiction Under CAFA.

9. This lawsuit is one over which this Court has original jurisdiction under 28 U.S.C. § 1453 because it is a civil action within the meaning of the Acts of Congress relating to removal of class actions. *See* 28 U.S.C. § 1453.

10. This action is brought by a putative representative person on behalf of a proposed class of individuals identified as "[a]ll persons who at any time after four (4) years prior to the filing of this action, or shorter statute of limitations as determined by the Court, through the date of trial, who were employed by Defendant in California as exempt CRAs, including but not limited to clinical research associate I, clinical research associate II and senior clinical research associate." Compl., ¶ 14. As such, this matter is a purported class action as that term is defined in the CAFA, 28 U.S.C. § 1332(d)(1)(B), and 28 U.S.C. § 1453.

11. This Court has original subject matter jurisdiction based on diversity of citizenship under CAFA because this matter was brought as a class action, diversity of citizenship exists between one or more members of the purported class and Defendant, the number of proposed class members is 100 or greater, and the amount placed in controversy by Plaintiffs' Complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), 1453.[1] Removal is therefore proper pursuant to 28 U.S.C. §§ 1441, 1446 and 1453.

---

[1] Defendant does not concede and reserves the right to contest at the appropriate time, Plaintiffs' allegations that this action can properly proceed as a class action and/or representative action. Defendant further does not concede that any of Plaintiffs' allegations constitute a cause of action under applicable California law.

**1. <u>Diversity of Citizenship Exists.</u>**

12. In order to satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, such that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

**a. Plaintiff Harvey Is a Citizen of California.**

13. "An individual is a citizen of the state in which he is domiciled . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

14. Plaintiffs allege that named Plaintiff Harvey is a citizen of the State of California and was employed by Defendant in California from approximately November 2023 until July 2025. Compl., Parties, ¶ 2. Plaintiffs do not allege that Harvey was a citizen of any state other than California. Thus, Harvey was domiciled in the State of California and is therefore a citizen of California for purposes of diversity jurisdiction in this matter.

**b. ICON Clinical Research LLC Is a Citizen of Delaware and Pennsylvania.**

15. Defendant ICON Clinical Research LLC is a limited liability company, which is treated the same as unincorporated associations for purposes of citizenship. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899

(9th Cir. 2006). "Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for purposes of diversity jurisdiction." *See id.* (*citing Gen. Tech. Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Village Assocs. Ltd P'ship*, 213 F.3d 48, 51 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)).

16. Therefore, for purposes of diversity jurisdiction, the corporate citizenship rule does not apply to LLCs. *See* 28 U.S.C. § 1332(c). Instead, the Ninth Circuit looks to the citizenship of each of the LLC's members. *See Johnson*, 437 F.3d at 899; *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990). Consistent with its sister circuits, the Ninth Circuit has held that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens. *Johnson*, 437 F.3d at 899; *Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 Fed. App'x 62 (9th Cir. 2011). "If a member of an LLC is a corporation, then the state of incorporation and its principal place of business must be shown." *Carleu v. FCA US LLC*, 2016 WL 304295, at *1 (C.D. Cal. Jan. 25, 2016).

17. Since November 12, 2025, when Plaintiff commenced this action, ICON Clinical has been a Delaware limited liability company, with its principal place of business in North Wales Montgomery County, Pennsylvania. The sole member of ICON Clinical since November 12, 2025 has been ICON US Holdings, Inc. ("ICON US Holdings").

18. For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). ICON US Holdings is, and since the commencement of this action has been, a corporation organized and existing under and by virtue of the laws of the State of Delaware. Currently and

prior to and since the commencement of this action, ICON US Holdings has had its corporate headquarters and principal place of business in North Wales Montgomery County, Pennsylvania. *Id.*; *see generally Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities" and, "in practice[,] it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center.'"). ICON US Holdings' headquarters and its executive officers have maintained their offices in Pennsylvania. These officers have directed, controlled, and coordinated ICON US Holdings' business activities and operations from Pennsylvania. Accordingly, ICON US Holdings is a citizen of Delaware and Pennsylvania for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

19. Neither ICON Clinical nor ICON US Holdings have been incorporated in California and neither has had its headquarters or executive offices based in California.

20. Based on the Complaint, therefore, at least one member of the putative class is a citizen of a state different from that of one defendant, as the named Plaintiff Harvey is a citizen of California, while ICON Clinical is a citizen of Delaware and Pennsylvania. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant"). Thus, minimal diversity exists.

21. Although Plaintiffs have listed 10 fictitiously named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (same).

**2. <u>There Are More Than 100 Putative Class Members.</u>**

22. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. §1332(d)(5)) is satisfied here because the putative class has more than 100 members. During the putative class period, which begins on November 12, 2021, ICON Clinical has employed over 100 individuals in the positions of Clinical Research Associate I, Clinical Research Associate II, and/or Senior Clinical Research Associate in California (collectively, "CRAs").

**3. <u>The Amount-in-Controversy Requirement Is Satisfied.</u>**

23. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6). A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81 (2014).

24. The "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 88-89 (quoting H.R.Rep. No. 112–10, p. 16 (2011)); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[A] removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements.").

25. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the applicability of CAFA should be resolved in favor of federal jurisdiction. Sen.Rep. No. 109-14, p. 42 (2005) ("If a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of

$5,000,000, the court should err in favor of exercising jurisdiction over the case.").

26. In assessing the amount in controversy, a court is to "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In *Vitran,* the court held that it was proper for a defendant in a putative wage and hour class action to establish the amount in controversy requirement for purposes of CAFA by assuming a minimum number of meal and rest period violations per class member per pay period. 471 Fed. App. at 648. Noting that the plaintiffs alleged that their claims were "typical" of the other putative class members, the court also found it proper to multiply the plaintiffs' claimed damages by the number of putative class members in order to meet the amount in controversy requirement. *Id.* at 649.

27. While Defendant denies Plaintiffs' factual allegations and denies that they or the putative class they purport to represent are entitled to any of the relief Plaintiffs have requested in the Complaint, it is clear that, when the maximum potential value of the claims of Plaintiffs and the putative class members are aggregated, the allegations within Plaintiffs' Complaint put into controversy an amount in excess of $5,000,000.[2] *Rhoades v. Progressive Casualty Ins., Co.*, 410

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiffs' Complaint. Defendant's references to specific damage amounts and their citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiffs' claims are without merit and that Defendant is not liable to Plaintiffs or any putative class member. In addition, Defendant denies that liability or damages can be established on a class-wide basis. Defendant specifically denies that Plaintiffs or the putative class have suffered any damages as a result of any act or omission by Defendant. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

F. App'x 10, 11 (9th Cir. 2010) ("'Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.'") (quoting *Lewis v. Verizon Communications Inc.*, 2010 WL 4645465, 4 (9th Cir. 2010)).

**a. Plaintiffs' Overtime Claim Places at Least $3,873,870 in Controversy.**

28. Plaintiffs' Complaint alleges that Defendant failed to pay them and the putative class members all overtime wages due in violation of Labor Code sections 510, 1182, 1194, and 1197. Compl., ¶¶ 24-26. Plaintiffs allege that: "Defendant misclassified Plaintiffs and these other CRAs as exempt employees. However, Plaintiffs and other CRAs were in fact non-exempt (not exempt) employees. Plaintiffs and the other CRAs worked more than eight hours per day or more than 40 hours per week. Defendant did not properly calculate Plaintiffs and the other Class Members' hours and did not properly compensate Plaintiffs and the other Class for the overtime hours they worked at the correct rates . . . ." Compl., ¶ 8.

29. In addition, Plaintiffs allege that they and the putative class they purport to represent are thus entitled to recovery of all unpaid wages. Compl., ¶¶ 25-26. The class period is alleged to be from November 12, 2021 through the present. *Id.*, ¶ 14.

30. From November 12, 2021 through approximately December 2, 2025, ICON Clinical employed approximately 182 individuals as CRAs in California for approximately 18,200 weeks. Each of the CRAs was a full-time employee. The average salary of these CRAs during this time period was approximately $118,059.03. Because the CRAs were full-time employees, the average hourly rate of pay for the CRAs is approximately $56.76/hr ($118,059.03 salary / 2,080 hours).

31. Under Plaintiffs' theory of the case and assuming a typical five-day workweek, if the CRAs were denied 0.5 hours of overtime pay per workday, the

potential unpaid overtime hours would be 2.5 hours per week, which would result in an amount in controversy on the overtime claim of: $56.76 (average hourly rate) x 1.5 (overtime rate) x 2.5 hours per week x 18,200 weeks = **$3,873,870**.

**b. Plaintiffs' Meal and Rest Period Claims Places at Least $2,066,064 in Controversy.**

32. Plaintiffs allege that "[b]ecause Defendant improperly treated Plaintiffs and the class members as "exempt," and because Plaintiffs and the class members worked in excess of 5 hours, Defendant's conduct in denying Plaintiffs and the class members their proper meal breaks violates Cal. Wage Order No 4-2001; Cal. Labor Code §§ 226.7 & 512." Compl., ¶ 27. Plaintiffs also allege that "[b]ecause Defendant improperly treated Plaintiffs and the class members as "exempt," and because Plaintiffs and the class members worked shifts lasting more than six hours up to 10 hours, and/or shifts lasting more than 10 hours up to 14 hours, Defendant's conduct in denying Plaintiffs and the class members their ten-minute rest breaks per four hours of work performed violates Cal. Wage Order No 4-2001; Cal. Labor Code §§ 226.7 & 512." Compl., ¶ 29.

33. The California Industrial Welfare Commission Wage Orders provide in relevant part that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." IWC Wage Order, § 11(A). Similarly, the wage orders provide in relevant part that "[e]very employer shall authorize and permit all employees to take rest periods . . . . The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours." IWC Wage Order 9, § 12(A). California Labor Code Section 226.7 provides that if an employer fails to provide a meal or rest period as required by law, the employer shall pay "one additional hour of pay at the employee's regular rate of compensation for each work

day that the meal or rest . . . period was not provided." *See also Brinker v. Superior Court*, 53 Cal. 4th 1004, 1039 (2012).

34. Based on the Complaint's allegations, Defendant could reasonably assume that Plaintiffs seek meal and rest period premiums for every day that a CRA has worked. *See, e.g.*, *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (approving a 100% violation rate because the complaint alleged "universal deprivation of meal and rest periods" because the defendant allegedly had "at all material times" failed to provide uninterrupted meal and rest periods); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal May 21, 2015) ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.").

35. Even though Defendant reasonably could assume a 100% violation rate for purposes of removal based on the Complaint's allegations, Defendant conservatively estimates that Plaintiffs have put into controversy a meal and rest period violation for every one out of five workdays (*i.e.*, a 20% violation rate). *See, e.g.*, *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) ("Because Plaintiff alleges a 'policy' of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and three rest break violations per employee per week reasonable."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *4 (C.D. Cal. May 9, 2018) (agreeing with the employer that its "assumed violation rate of two missed meal/rest break periods per workweek [was] reasonable in light of the complaint's allegation that [the employer] had a 'consistent policy'" of failing to provide meal and rest periods).

36. Assuming that Defendant failed to provide meal and rest periods every

one out of five workdays, the potential amount in controversy would be: $56.76 (average hourly rate) x 2 (number of meal/rest period violations per week) x 18,200 weeks = **$2,066,064**.

**c. Plaintiffs' Waiting Time Penalties Claim Places at Least $1,011,945.60 in Controversy.**

37. Plaintiffs allege that "Upon the termination of Plaintiffs' employment and members of the Termination Pay Sub-Class, Defendant failed to pay them their final wages pursuant to Cal. Labor Code §§ 201-203 and accordingly owes waiting time penalties pursuant to Cal. Labor Code § 203." Compl., ¶ 33.

38. The statute of limitations for "waiting time" penalties under Labor Code Section 203 is three years. *See* Labor Code § 203; Cal. Code of Civ. Pro. § 338.

39. From November 12, 2022 through approximately December 2, 2025, approximately 82 CRAs in California separated from their employment with Defendant with an average salary of $106,943.81. The hourly rate of pay for these CRAs is therefore approximately $51.42 per hour ($106,943.81 / 2,080). As such, the amount of waiting time penalties at issue, based on Plaintiffs' allegations, is approximately **$1,011,945.60** (82 formerly employed CRAs x $51.42 per hour x 8 hours per day x 30 days).

**d. Plaintiffs' Wage Statement Claim Places at Least $237,850 in Controversy.**

40. Plaintiffs allege that "Defendant's conduct, as set forth above, in failing to provide proper itemized wage statements to Plaintiffs, as required by California state law, violates Cal. Lab. Code §226(a). This claim is brought by Plaintiffs on behalf of" all class members. Compl., ¶ 35-36.

41. Labor Code section 226(e) provides that an employee is entitled to recover the greater of all actual damages or $50 for the initial alleged violation and $100 for each alleged subsequent violation, up to a maximum of $4,000, plus costs

and reasonable attorneys' fees, if an employer knowingly and intentionally fails to provide an accurate, itemized wage statement. Cal. Lab. Code § 226(e). There is a one-year statute of limitations on this claim. *See* Cal. Code Civ. Proc. §340(a); *Martinez v. Morgan Stanley & Co. Inc*., 2010 WL 3123175, at *6 (S.D. Cal. August 9, 2010).

42. From November 12, 2024 through approximately December 2, 2025, Defendant estimates that it employed approximately 115 CRAs in California for a total of approximately 2,436 pay periods. Assuming the wage statements Defendant issued to CRAs in California violate Labor Code section 226, as Plaintiffs allege, the amount of wage statement penalties in controversy for CRAs in California is approximately **$237,850** (115 total initial pay periods x $50 for the first pay period = $5,750) + (2,321 total subsequent pay periods x $100 per pay period = $232,100)).

**e. Plaintiffs' Alleged Attorneys' Fees Place at Least $1,797,432.50 in Controversy.**

43. Plaintiffs seek to recover attorneys' fees. Compl., Prayer for Relief, ¶ g. Attorneys' fees are properly included in determining the amount in controversy if the law under which the plaintiff has brought suit allows for their recovery. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 416 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)) ("The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'").

44. For purposes of class actions, attorneys' fees may be calculated by assuming 25 percent of the potential damages on claims for which attorneys' fees

are available. *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund). Here, attorneys' fees are potentially available on all the claims that Plaintiffs have asserted, which total $7,189,730. Therefore, the amount in controversy for attorneys' fees is **$1,797,432.50** ($7,189,730 x 0.25).

**f. The Amount in Controversy for Plaintiffs' Claims Exceeds $5,000,000.**

45. As demonstrated above, the alleged damages on Plaintiffs' claims for relief total at least $8,987,162. Based on the calculations outlined above, the potential total amount in controversy exceeds $5,000,000.00 as follows:

| | | |
|---|---|---|
| A. | Unpaid overtime: | **$3,873,870**.00 |
| B. | Meal/rest period premiums: | **$2,066,064.00** |
| C. | Waiting time penalties: | **$1,011,945.60** |
| D. | Wage statement penalties: | **$237,850.00** |
| E. | Attorneys' fees: | **$1,797,432.50** |
| | **TOTAL AMOUNT IN CONTROVERSY:** | **$8,987,162** |

46. Thus, although Defendant denies Plaintiffs' allegations and theories of maximum recovery, denies that they or the putative class they purport to represent are entitled to any of the relief for which they have prayed, and expressly reserves all its defenses, based on Plaintiffs' allegations, the potential amount in controversy exceeds the $5,000,000 threshold set forth under 28 U.SC. §1332(d)(2).

47. Therefore, Plaintiffs' Complaint satisfies the amount in controversy requirement under CAFA.

**B. <u>Diversity Jurisdiction Exists Under 28 U.S.C. § 1332(a)</u>**

48. This action is also one over which this Court also has original jurisdiction under 28 U.S.C. § 1332(a) and is one that Defendant may remove pursuant to 28 U.S.C. § 1441(b). As discussed in detail below, this is a civil action between citizens of different states where the amount in controversy exceeds the

sum or value of $75,000, exclusive of interest and costs.

**1. <u>Complete Diversity of Citizenship Exists</u>**

49. A case may be heard in federal court under diversity jurisdiction if there is complete diversity, *i.e.*, all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332(a). A defendant may remove an action to federal court under 28 U.S.C. § 1332, provided no defendant is a citizen of the same state in which the action was brought or of the same state in which the plaintiff is a citizen. 28 U.S.C. § 1441(a), (b). Here, all requirements are met because Plaintiffs are citizens of California and Missouri, while Defendant is a citizen of Delaware and Pennsylvania.

**a. Plaintiffs are Citizens of California and Missouri**

50. As discussed above, Plaintiff Harvey was domiciled in the State of California at the time the lawsuit was filed and is therefore a citizen of California for purposes of diversity jurisdiction in this matter. *See supra* ¶¶ 9-10.

51. Plaintiffs allege that named Plaintiff Nedved is a citizen of the State of Missouri and worked for Defendant in California during the putative class period. Compl., ¶ 1. Thus, per the Complaint, Plaintiff Nedved was domiciled in the State of Missouri at the time that the lawsuit was filed and is therefore a citizen of Missouri for purposes of diversity jurisdiction in this matter.

**b. Defendant is a Citizen of Delaware and Pennsylvania**

52. As discussed above, Defendant is, and at all pertinent times was, a citizen of Delaware and Pennsylvania because its sole member ICON US Holdings, a corporation, was incorporated in the State of Delaware and its headquarters and principal place of business was in the state of Pennsylvania. *See supra* ¶¶ 11-17.

53. Based on the Complaint, therefore, all Plaintiffs are citizens of a state different from that of the Defendant, as Plaintiff Harvey is a citizen of California and Plaintiff Nedved is a citizen of Missouri, while ICON Clinical is a citizen of Delaware and Pennsylvania. Thus, complete diversity exists under 28 U.S.C. §

1332(a).

54. Although Plaintiff has listed 50 fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1); *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998) (same).

### 2. **The Amount in Controversy for Plaintiff Harvey's Claims Exceeds $75,000**

55. Federal district courts have original jurisdiction over civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. §1332(a). Removal is proper if, from the allegations of the Complaint and the Notice of Removal, it is more likely than not that the claims exceed $75,000, exclusive of interest and costs. The fact that a complaint fails to specify the total amount of damages in a dollar amount does not deprive this Court of jurisdiction. *See Banta v. Am. Med. Response Inc.*, 2011 U.S. Dist. LEXIS 77558, at *4 (C.D. Cal. July 15, 2011). Indeed, a removing party need only plausibly plead that the alleged claims are likely to exceed the jurisdictional minimum. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376-77 (9th Cir. 1997).

56. While Defendant denies any and all liability to Plaintiffs, Plaintiff Harvey's individual claims places more than $75,000 in controversy, exclusive of interest and costs.

#### a. **Plaintiff Harvey's Individual Overtime Claim Places at Least $20,703.83 in Controversy**

57. As stated above, the Complaint alleges that Defendant failed to pay Harvey all overtime wages due in violation of Labor Code sections 510, 1182, 1194, and 1197. Compl., ¶¶ 24-26. Plaintiff Harvey alleges that Defendant misclassified her as an exempt employee and in so doing failed to pay her for any overtime hours that she worked. Compl., ¶ 8; *see also supra* ¶ 24.

58. Assuming that Plaintiff Harvey worked a half hour of overtime per workday, that would result in an alleged 2.5 hours of unpaid overtime per week. Per the Complaint, Plaintiff Harvey was employed for approximately 87 weeks with Defendant, which would put at issue approximately 217.50 hours of alleged unpaid overtime (2.5 hours x 87 weeks = 217.50 hours).

59. Plaintiff Harvey's annual salary was $132,000, which equates to an hourly rate of approximately $63.46 ($132,000 / 2080 hours).

60. As such, Plaintiff Harvey's alleged unpaid overtime claim places at least **$20,703.83** in controversy [2.5 hours x 87 weeks x $63.46 x 1.5 overtime rate = $20,703.83].

**b. Plaintiff Harvey's Individual Meal and Rest Period Claims Places at Least $11,042.04 in Controversy**

61. As stated above, Plaintiff Harvey alleges that Defendant failed to provide her with meal and rest breaks due to her purported misclassification. Compl., ¶¶ 27-29.

62. Assuming that Defendant failed to provide Plaintiff Harvey with meal and rest periods every one out of five workdays, the potential amount in controversy under Section 226.7 for failing to provide meal and rest breaks to Plaintiff Harvey would be: $63.46 (average hourly rate) x 2 (number of meal/rest period violations per week) x 87 weeks = **$11,042.04**.

**c. Plaintiff Harvey's Waiting Time Penalties Claim Places at Least $15,230.40 in Controversy.**

63. As stated above, Plaintiff Harvey alleges that upon her employment separation with Defendant that Defendant failed to pay her all wages due, such as the overtime she claims she was owed, and thus she is owed waiting time penalties under Labor Code Section 203. Compl., ¶ 33. The Complaint, therefore, puts at issue waiting time penalties for Plaintiff Harvey in the amount of **$15,230.40** ($63.46 average rate x 8 hours per day x 30 days).

**d. Plaintiff Harvey's Claim for Attorneys' Fees Places at Least $75,000 in Controversy.**

64. As stated above, Plaintiff Harvey seeks to recover attorneys' fees. Compl., Prayer for Relief, ¶ g; *see supra* ¶ 39. Here, if Plaintiff Harvey were to prevail on any of her claims, she arguably would be entitled to recover reasonable attorneys' fees. *See* Cal. Lab. Code 1194(a) (attorneys' fees on minimum wage and overtime claims recoverable); *Betancourt v. OS Restaurant Servs., LLC*, 83 Cal. App. 5th 132, 134 (2022) (awarding attorneys' fees for meal and rest break claims and waiting time penalties); Cal. Lab. Code § 226(e)(1) (attorneys' fees on wage statement penalty claims recoverable). The potential attorneys' fees at issue in an action run through the end of the suit. *See Fritsch*, 899 F.3d at 794 ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

65. Here, Defendant reasonably estimates that Plaintiffs' counsel has spent and will spend time on the following case-related items, if litigated through trial, which total over 150 hours: (i) conducting an initial fact investigation and drafting the complaint (10 hours); preparing for and participating in the Rule 26(f) conference and drafting the Rule 26(f) report (3 hours); preparing for and participating in an initial case management conference (2 hours); propounding written discovery (2 hours); reviewing case documents, including personnel, time, and pay records (3 hours); responding to written discovery (5 hours); preparing for and defending Plaintiff's deposition and preparing for and taking various witness depositions (35 hours); opposing motion for summary judgment (25 hours); preparing for and attending ADR session (8 hours); work on pre-trial related submissions, including pre-trial conference, memorandum of contentions of fact and law, witness lists, exhibits lists, final pre-trial conference order, etc. (40 hours); 2-day trial (20 hours).

66. Courts in this circuit have found that estimates of attorney time

ranging between 100 to 300 hours in employment cases is reasonable. *See, e.g.*, *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Swans v. Fieldworks, LLC*, 2023 WL 196918, at *3 (C.D. Cal. Jan. 17, 2023) ("[A]n attorney handling an individual wage-and-hour case typically spends far more than 100 hours on the case."). Further, the plaintiff's bar has sought and been awarded fees that exceed $100,000 in individual wage and hour cases. *See, e.g.*, *Betancourt*, 83 Cal. App. at 134-39 (claiming over 800 hours and $580,000 in fees and ultimately awarded $280,000 in fees for meal and rest break, waiting time penalty, and wage statement penalty claims where the plaintiff only recovered $15,375); *Baker v. Tech Data Corp.*, 2022 WL 1080944, at *2 (C.D. Cal. Apr. 11, 2022) (finding "an estimate of 200 hours through trial is conservative and appropriate" in an individual wage and hour case and that more than $100,000 in fees was at issue for purposes of the amount in controversy); *Boyce v. Indep. Brewers United Corp.*, 2017 WL 2377107, at *1 (N.D. Cal. June 1, 2017) (claiming over $200,000 in fees had plaintiff prevailed at trial in an individual wage and hour action).

67. Although Defendant denies Plaintiffs' claim for attorneys' fees, for purposes of removal, Defendant reasonably assumes that Plaintiffs' counsel's fees through trial likely are to exceed $75,000. Assuming an hourly rate of $500 and 150 hours of work on the case through trial, the attorneys' fees at issue add at least another **$75,000** to the amount in controversy (150 hours x $500/hour = $75,000.00).

**e. The Amount in Controversy for Plaintiff Harvey's Individual Claims Exceeds $75,000.**

68. As demonstrated above, the alleged damages on certain of Plaintiff Harvey's claims total at least $121,976.27. Based on the calculations outlined above, the potential total amount in controversy exceeds $75,000.00 as follows:

| | | |
|---|---|---|
| A. | Unpaid overtime: | **$20,703.83** |
| B. | Meal/rest period premiums: | **$11,042.04** |
| C. | Waiting time penalties: | **$15,230.40** |
| D. | Attorneys' fees: | **$75,000.00** |
| | **TOTAL AMOUNT IN CONTROVERSY:** | **$121,976.27** |

69. Thus, although Defendant denies Plaintiff Harvey's allegations and theories of maximum recovery, denies that she is entitled to any of the relief she seeks, and expressly reserves all its defenses, based on Plaintiffs' allegations, the potential amount in controversy exceeds the $75,000 threshold set forth under 28 U.S.C. §1332(a).

70. The Court has supplemental jurisdiction over Plaintiff Nedved's claims and any putative class claims. *See* 28 U.S.C. § 1367.

## IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

71. As set forth above, this Notice of Removal is timely filed. All the pleadings, process and orders served upon or by Defendant, or filed, in this action are attached in **Exhibits 1-4**.

72. Venue lies in the Southern District of California as this action was originally brought in the Superior Court of the State of California, County of San Diego.

73. As required by 28 U.S.C. § 1446(d), Defendant will promptly serve Plaintiffs with this Notice of Removal and will promptly file a copy of this Notice of Removal with the Superior Court of the State of California, County of San Diego.

74. Defendant is informed and believes and, on that basis, alleges that none of the fictitiously named defendants have been identified by Plaintiffs or served with the Summons and Complaint.

75. The prerequisites for removal under 28 U.S.C. §§ 1332(a), (d), 1441

and 1446 have been met.

76. If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present a brief and oral argument in support of their position that this case is removable.

77. By this Notice of Removal and the exhibits attached hereto and the documents filed concurrently herewith, Defendant does not intend to make any admissions of fact, law or liability relating to the claims in the Complaint, and it expressly reserves the right to make any and all defenses and motions necessary in its defense against Plaintiffs' allegations.

## V. <u>CONCLUSION</u>

78. Pursuant to these statutes and in accordance with the procedures set forth in 28 U.S.C. § 1446, Defendant requests that the above-captioned action pending in the Superior Court of the State of California, County of San Diego, be removed therefrom to the United States District Court for the Southern District of California.

Dated: December 11, 2025

MORGAN, LEWIS & BOCKIUS LLP

By *\/s/ Andrew P. Frederick*
Andrew P. Frederick
Nicole L. Antonopoulos

Attorneys for Defendant
ICON CLINICAL RESEARCH LLC